# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>C.W. MINING COMPANY,<br>    Debtor,<br><br>COMMONWEALTH COAL SERVICES, INC., INTERMOUNTAIN POWER AGENCY, NEVADA POWER COMPANY, and TENNESSEE VALLEY AUTHORITY,<br>    Petitioners/Movants,<br><br>vs.<br><br>KENNETH A. RUSHTON, Chapter 7 Trustee,<br>    Respondent. | **MEMORANDUM DECISION AND ORDER DENYING LEAVE TO FILE INTERLOCUTORY APPEAL**<br><br>Case No. 2:10-mc-0017DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on a Motion for Leave Appeal filed by Movants Commonwealth Coal Services, Inc., Intermountain Power Agency, Nevada Power Company, and Tennessee Valley Authority. The Chapter 7 Trustee, Kenneth A. Rushton, opposed the motion and the court allowed Movants' to file a reply memorandum. Accordingly, the matter is fully briefed. The court held a hearing on the motion on February 11, 2010. At the hearing, Movants were represented by Richard E. Riggs, and the Trustee was represented by Michael N. Zundel. At the conclusion of the hearing, the court took the matter under advisement. Having carefully considered the arguments presented at the hearing and advanced in the briefing, and the law and facts relevant to the motion, the court issues the following Memorandum Decision and Order.

1

**BACKGROUND**

Movants seek to appeal an adverse ruling by the Bankruptcy Court. Movants are some of the defendants in an adversary proceeding brought by the Chapter 7 trustee, Kenneth A. Rushton, in connection with the bankruptcy of C.W. Mining.

C.W. Mining's bankruptcy began as an involuntary Chapter 11 bankruptcy on January 8, 2008. As is typical, an automatic stay went into effect on that date. On November 13, 2008, the bankruptcy was converted to a Chapter 7 liquidation. The Trustee brought the adversary proceeding on August 31, 2009.

C.W. is a Utah coal mining company engaged in underground mining operations. In 1997, C.W. entered into a Coal Operating Agreement with C.O.P. Coal Development Company ("Debtor-COP Lease") with respect to the Bear Canyon Mine. The granting provision of the Debtor-COP Lease provides that "in consideration of the royalties to be paid and the conditions to be observed . . . [COP] does hereby grant unto [C.W.] the exclusive authority to operate and control the following described tracts of land . . . for the term of 25 years, beginning March 1, 1997, and extending to February 28, 2022."

After C.W.'s bankruptcy began in January 2008, and notwithstanding the automatic stay that went into effect, COP sent to C.W. a notice of eviction from the Bear Canyon Mine on May 9, 2008. The notice told C.W. that it had failed to meet the conditions to accept a new coal operating agreement and demanded that C.W. vacate the mine by July 5, 2008, unless it met all of the terms of acceptance for a new coal operating agreement by then.

At the same time, the Trustee states that Standard Industries, Inc., an entity affiliated with COP, seized, in violation of the automatic stay, all of C.W.'s cash flow by

making demands on C.W.'s customers for account payments. Due to these circumstances, the Trustee claims that C.W. was pressured into entering into a conditional sales agreement with Hiawatha on June 24, 2008.

Under C.W.'s conditional sales agreement with Hiawatha, C.W. promised to sell to Hiawatha all its mine related assets, including C.W.'s Permit with the Utah Division of Oil, Gas & Mining ("DOGM"), provided that the applicable governmental authorities approved the transfer to Hiawatha. The conditional sales agreement also stipulated that until transfer of the mining permit was approved, all mining would be conducted in the name of C.W. and that C.W. would "continue as operator and permittee."

On August 8, 2008, the Bankruptcy Court entered a Preservation Order that prevented C.W. from consummating the transfer of its DOGM Permit without court permission. As of that date, Hiawatha had not obtained the necessary approvals to transfer C.W.'s permit into its name. The Bankruptcy Court's Preservation Order stated that C.W. would need to file a motion, notice all parties, and set a hearing to get approval for a transfer of its permit to Hiawatha. In a March 18, 2009 Memorandum Decision, the Bankruptcy Court refused to grant Hiawatha's Motion for Relief from Stay to allow Hiawatha to attempt to obtain the permit from DOGM.

The Bankruptcy Court ruled that the 1997 Debtor-COP Lease, which gave C.W. exclusive possessory and operating rights to the mine, was in full force and effect as of the petition date and has since been an asset of the estate. The Bankruptcy Court further ruled that on July 1, 2008, when Hiawatha took possession of the mine premises and commenced mining operations, based on the conditional sales agreement that had not been presented to or approved by the court, it violated the automatic stay. Whether or not

3

the mining by Hiawatha is considered a violation of the automatic stay, however, under the terms of the conditional sales agreement, all coal that has been mined at Bear Canyon Mine since June 24, 2008, has been done under the authority of C.W.'s DOGM Permit and C.W. is considered the operator and permittee of such mining.

The Trustee's adversary proceeding asserted a claim against COP and the Movants, who are entities who purchased coal from Hiawatha, for turnover of the purchased coal. The claim alleges that C.W. owned the coal that Hiawatha had mined and sold to Movants. The Trustee also sought several declarations from the Bankruptcy Court to the effect that the coal at issue is property of C.W.'s bankruptcy estate.

On September 29, 2009, Movants filed a Joint Motion to Dismiss Complaint seeking a dismissal of the Trustee's claims. Movants claim that under controlling Utah law, the purchased coal is not the property of the estate because C.W. did not have title to the coal that was mined by Hiawatha. On November 9, 2009, the Bankruptcy Court held a hearing on the Motion to Dismiss and denied the motion. The Bankruptcy Court found that there are factual issues in the case that preclude a ruling as a matter of law. Movants filed the present motion for leave to file an interlocutory appeal, which was opposed by the Trustee and transferred to this court.

**DISCUSSION**

Under 28 U.S.C. § 1292(b), interlocutory appellate review of a Bankruptcy Court ruling is proper where there is (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. A committee for the Tenth Circuit concluded that interlocutory appeals under 28 U.S.C. § 1292 "should be

limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *State of Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994). A "controlling question of law" is one where "either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation." *Alfa v. Enron Creditors Recovery Corp.*, 2009 WL 3349471, at *5 (S.D.N.Y. Oct. 16, 2009).

"[T]he issue in a motion for leave to appeal from an interlocutory order in bankruptcy court is not whether the bankruptcy court 'got it wrong,' but whether an appeal is proper." *Columbia Cas. Co. v. Markus*, 2006 Dist. LEXIS 64181, *10 (D. Utah Sept. 7, 2006) (unpublished).

### A. Controlling Question of Law

Movants contend that the Trustee's turnover claim and requests for declaratory judgment depend upon the same controlling question of law: whether the purchased coal is property of the estate. It is established law that the nature of the debtor's property interest is determined by state law. *In re Ford*, 574 F.3d 1279, 1283 (10th Cir. 2009) ("Property interests referred to in the Bankruptcy Code are generally defined by state law.") Movants rely on a case from the Utah Supreme Court, *Benton v. State of Utah*, 709 P.2d 362 (Utah 1995) to assert that C.W. had no property interest in the purchased coal as a matter of law. Because the ruling in *Benton* is the focus of Movants' motion, the court must closely analyze its application to the present case.

In *Benton*, United Development had a mineral lease from the State of Utah which granted United Development "the exclusive right and privilege to mine, remove, and

dispose of all . . . Building Stone, in, upon, or under the . . . tract of land." *Id.* at 366. Unlike the Debtor-COP Lease in this case, the lease was not exclusive. In *Benton*, the State of Utah had given a lease to the same tract of land to United Development in 1970, a lease to Floyd Benton in 1981, and to Portland Cement also in 1981. *Id.* at 364. United Development did not mine any of the stone during the first ten-year term of its lease, but Portland Cement extracted and removed substantial amounts of limestone during that period without United Development's consent. *Id.* Portland Cement mined the stone pursuant to federal mining claims that were subsequently declared invalid in a federal court action. *Id.* Therefore, unlike this case, in which C.W. conducted mining operations and was allegedly forced into allowing another party the right to mine under its own DOGM permit, United Development never mined the property at issue in *Benton* and sought recovery for mining engaged in by a party who thought it had federal mining claims to the land.

United Development brought the action against Portland Cement claiming wrongful removal of the limestone. *Id.* The district court concluded that United Development did not have a cause of action against Portland for wrongful removal of limestone; such a claim would only lie with the owner of the fee. *Id.* at 365. The district court explained: "Any claim against Portland Cement . . . for removal of limestone from the leased premises is a claim by the Utah Division of State Lands and not a claim by Professional United Development because Professional United Development in no way was denied occupancy, use, or in any way interfered with by Portland Cement." The court further stated that "in fact Professional United Development never even attempted to go into possession of the leased premises during the term of said lease, and it is the

6

State of Utah as owner of the fee estate that would have any claim in the event the mining claims of Portland Cement . . . are invalid." *Id.*

The Utah Supreme Court agreed with the district court. The court noted that the plaintiffs asserted their claim in terms of "trespass, trover, and conversion," but "[e]ssential to that claim would be proof that United Development had possession of the limestone it argues was wrongfully removed. The record shows that United Development did not have such possession." *Id.* The court further noted that "[e]ssential to the doctrine of conversion is that the plaintiff have title or possession of the item allegedly converted." *Id.* The court cited previous law recognizing that "[t]he general rule is that an action for conversion is not maintainable unless the plaintiff, at the time of the alleged conversion, is entitled to immediate possession of the property. An interest in the property which does not carry with it a right to possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time." *Id.* Accordingly, the court found that the doctrine of conversion did not apply "because the 1970 lease between the State and United Development only gave United Development the right to possession of the stone at a future time – namely, at the time United Development severed the stone from the land." *Id.* at 366.

In its discussion of lease provisions, the court recognized that leases, such as United Development's lease with the State, give "'a right to quarry and take stone from the area involved'" and such stone "'[becomes] the property of [the lessees] only upon its actual severance.'" *Id.* (quoting *Jones Cut Stone Co. v. New York*, 166 N.Y.S.2d 742, 746 (1957)). The title to rock "cannot be divested or acquired until it has been taken from the earth." *Id.* The court also discussed another New York case in which the court

7

found that a lease gave possession to the lessee of the stone they had quarried and removed within the terms of the lease, "'but what they did not quarry out and sever from the land remained the property of the owner of the fee.'" *Id.* (quoting *Baker v. Hart*, 123 N.Y. 470, 472 (1890)). Based on these cases, the Utah Supreme Court concluded that United Development "did not have the possessory rights in the stone necessary to maintain a cause of action for conversion against Portland." *Id.*

This case, however, does not present a claim for state law conversion. Rather, it presents a turnover action brought by a trustee in bankruptcy as a result of conduct already found to have violated the automatic stay in C.W.'s bankruptcy. Even though there are certainly similarities between a conversion claim and a turnover claim, this case presents factual issues as to whether C.W. was in possession of the coal. Unlike United Development, who never entered the property, C.W. had been mining the property as of the date it entered bankruptcy and subsequently entered into a conditional sales agreement with Hiawatha that deemed C.W. the operator and permittee of all mining on the property until such time as the DOGM Permit was transferred to Hiawatha. The DOGM Permit was never transferred to Hiawatha.

In addition, it was clear in *Benton* that United Development's rights had not been interfered with or prejudiced. In contrast, this case presents allegations of an attempted eviction, a third party interfering with C.W.'s cash flow, and a conditional sales agreement entered into in violation of the automatic stay in C.W.'s bankruptcy case. It cannot be asserted that such allegations present a lack of interference or prejudice. Moreover, on a motion to dismiss, the court assumes that the well-pled factual allegations are true.

Movants, however, claim that regardless of other facts *Benton* creates clear black-letter law that a mineral lessee does not have any right or title to stone that it does not physically extract itself. The Trustee admits that the purchased coal was severed by Hiawatha after June 24, 2008, not C.W. But, the Trustee argues that *Benton*'s reach is limited and it does not preclude the turnover action because it did not contemplate several of the Trustee's legal and equitable grounds for maintaining the action. The Trustee persuasively argues that C.W. has legal and/or equitable rights to maintain an action for turnover of the purchased coal or its value because (1) the Debtor-COP Lease provided C.W. with a true lease of the property as opposed to a mere mineral lease to the land; (2) COP and Hiawatha knowingly violated the automatic stay by evicting C.W. from the Bear Canyon Mine in an attempt to deprive the estate's creditors of the benefit of the Debtor-COP Lease which was in full effect on the date of the bankruptcy filing; (3) the terms of the conditional sales agreement between C.W. and Hiawatha C.W. was deemed to be the operator of the mine until Hiawatha had the permit transferred, which never occurred; (4) the purchased coal was mined under C.W.'s DOGM permit; and (6) the purchased coal must be deemed to be property of the estate under 28 U.S.C. § 541(a)(6) because C.W. was the operator when the coal was mined under the terms of both leases and the coal garnered a profit under the Debtor-COP Lease.

Similarly, the court finds Movants' reading of *Benton*'s reach to be too broad. The *Benton* court did not attempt to redefine parties' contractual rights or their obligations to abide by the automatic stay in place as the result of a bankruptcy. Nor does its conclusion with respect to the type of conversion claim asserted in that case trump any legal issues that may be raised by the specific factual circumstances presented in a

9

bankruptcy case such as the present case.  Should the conditional sales agreement be an operative agreement even though it was entered into in violation of the automatic stay?  What effect does that violation have on the construction of the agreement?  Do the terms of the conditional sales agreement stating that C.W. is the operator and permittee until such time as Hiawatha obtains a transfer of the DOGM Permit make C.W. the legally recognized entity who mined the coal even if it did not physically mine the coal?  Are the terms of the conditional sales agreement ambiguous?  This court does not agree with Movants that *Benton* makes all of these case-specific issues irrelevant as a matter of law.  In addition, the Bankruptcy Court properly recognized that *Benton* did not address all of the factual issues at play in this bankruptcy action.  These factual differences precluded a ruling as a matter of law on Movants' motion to dismiss.  This court would have ruled precisely as the Bankruptcy Court ruled and denied the motion to dismiss.  Movants improperly try to broaden the holding of *Benton* to include factual situations and legal issues that it did not address or contemplate.

The court also finds no merit in Movants' hyper-technical argument that takes issue with the precise words used by the Bankruptcy Court in denying its motion to dismiss.  The court stated at the hearing that it might be possible for the Trustee to distinguish *Benton* factually and state a "plausible extension of the claim for relief."  Movants are correct in stating that the operative pleading standard requires a claim to be plausible, not a plausible extension of a claim.  The court finds, however, that the claim actually pleaded by the Trustee is plausible regardless of what may have been stated by the Bankruptcy Court.

### B. Affect on Termination of Litigation

Movants contend that the controlling issue of law in this case cannot be avoided and correct application of *Benton* will avoid costly and unnecessary litigation. Movants argue that an appeal should be speedily decided and the legal issue resolved so that they are not forced to submit to lengthy discovery. On the other hand, the Trustee argues that rather than materially advancing the ultimate disposition of this adversary proceeding, the granting of the motion for leave to file an appeal would likely cause further delay.

The court finds no basis for Movants' assertion that the discovery on the issues presented by this case would be undue or lengthy. The case is not complex and it is scheduled to be ready for trial by October 2010. The issue can be resolved on summary judgment prior to the October trial date or at the October trial. In either event, the bankruptcy proceeding will resolve the issue far more expeditiously than an appeal to district court, which this court believes would simply affirm the Bankruptcy Court's decision and require the parties to begin discovery at a much later date.

There is also evidence that interlocutory appeal would not result in a significant avoidance of future proceedings. Even if the court granted Movants' motion for leave to appeal, litigation involving the same legal and factual issues will continue in the Bankruptcy Court with other parties. The Trustee is also seeking recovery of the proceeds of the purchased coal from Standard Industries, COP, and Hiawatha. The claims against these entities are significantly interrelated to the claim against the Movants. Movants are also defendants in the Trustee's Twelfth Claim for Relief asserted in the Trustee's recent Second Amended Complaint. Thus, even if this court grants the

appeal on the present claim for relief, Movants will likely remain parties to the portion of the adversary proceeding that will not be stayed by this motion.

For these reasons, the court concludes that the interlocutory appeal would not serve to advance the termination of proceedings.

### C. Exceptional Case

Lastly, an interlocutory appeals from bankruptcy courts to district courts "should be limited to extraordinary cases, and the party seeking review has the burden of persuading the court that exceptional circumstances justify deviating from the policy of postponing appellate review until a final judgment has been entered in the case." *Columbia Cas. Co*, 2006 U.S. Dist. LEXIS 64181, at *11. Movants have failed to meet their burden of establishing that his is an extraordinary case or that there are exceptional circumstances that warrant allowing an interlocutory appeal. Movants claim only that the Bankruptcy Court erred in its interpretation of *Benton*. While Movants may disagree with whether *Benton* is distinguishable from the present case, they have not met their burden in demonstrating exceptional circumstances justifying an interlocutory appeal on the issue.

## CONCLUSION

Based on the above reasoning, Movants Commonwealth Coal Services, Inc., Intermountain Power Agency, Nevada Power Company, and Tennessee Valley Authority's Motion for Leave to Appeal is DENIED. This decision closes the case opened in the district court to address the motion.

DATED this 12th day of February, 2010.

_____
DALE A. KIMBALL,
United States District Judge